# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

GMF ELCM FUND L.P., GMF ELCM
LLC, GMF ELCM REGENCY I LLC
and GMF ELCM REGENCY II LLC,

        Plaintiffs,

      v.

ELCM HCRE GP LLC, ELCM
SPONSOR I HOLDCO LLC, ELCM
PARTNERS, LLC, ELCM ASSET
MANAGER HOLDCO LLC and
ANDREW WHITE,

        Defendants,

      v.

EAST LAKE CAPITAL
MANAGEMENT LLC, ELCM
HEALTHCARE REAL ESTATE FUND
LP, ELCM SPONSOR I LLC and GMF
RSL BUYER LLC,

        Nominal Defendants.

)
)
)
)
)
)
)
) C.A. No. 2018-0840-SG
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## MEMORANDUM OPINION

Date Submitted: June 26, 2019
Date Decided: August 7, 2019

David E. Ross and Bradley R. Aronstam, of ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; OF COUNSEL: Joshua S. Amsel, Matthew R. Friedenberg, and Thomas G. James, of WEIL, GOTSHAL & MANGES LLP, New York, New York, *Attorneys for Plaintiffs.*

David E. Ross and Bradley R. Aronstam, of ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware, *Attorneys for Receiver.*

Andrew White, *pro se.*

Ryan P. Newell, Kyle Evans Gay, and Shaun Michael Kelly, of CONNOLLY GALLAGHER LLP, Wilmington, Delaware, *Attorneys for Nominal Defendants.*

GLASSCOCK, Vice Chancellor

The writer Jorge Luis Borges opined that reading is a more intellectual activity than writing.[1]  Readers attempting to understand the history of the progress—if progress is the appropriate word—of this litigation may come to the same conclusion.  Intrepid readers of this Memorandum Opinion may attempt to master the organization of the several dozens of entities created by the individual Defendant, Andrew White, to pursue a business of investing in and operating nursing homes, as I have described below.  Fortunately, less intrepid, perhaps wiser readers will quickly grasp the simple issue presented.  The Plaintiffs are investors in Mr. White's business.  They are partners in one of the entities, ELCM Healthcare Real Estate Fund LP ("HCRE").  They have brought an action against Mr. White and a few of his related entities, alleging contractual and fiduciary breaches.  They sought, and I granted, a preliminary receivership over HCRE, which had suffered as Mr. White's business operations underwent spectacular failures.  Currently before me is a motion to dissolve HCRE, on the ground that it can no longer operate to fulfill the partnership purpose.  Dissolution is an extraordinary equitable remedy.  It should not be invoked—and is never applied—lightly.  However, the curious and insidious nature of the business's failure, as well as the similar nature of this litigation itself, compel me to grant the request to dissolve HCRE.  The partnership can no longer be

---

[1] Jorge Luis Borges, *Collected Fictions*, Preface to the First Edition, (Andrew Hurley trans., Penguin 1998).

operated to the ends intended by the parties. My rationale follows an earnest attempt to state the facts, below.

## I. BACKGROUND

*A. The Parties*

Plaintiff GMF ELCM Fund L.P. is a Delaware limited partnership and a limited partner of Nominal Defendant HCRE.[2]

Plaintiff GMF ELCM LLC is a Delaware limited liability company and a member of Nominal Defendants ELCM Sponsor I, LLC and East Lake Capital Management LLC.[3]

Plaintiffs GMF ELCM Regency I LLC and GMF ELCM Regency II LLC are both Delaware limited liability companies and members of Nominal Defendant GMF RSL Buyer LLC.[4]

Defendant ELCM HCRE GP LLC is a Delaware limited liability company, and is the General Partner of HCRE.[5]

Defendant ELCM Sponsor I HoldCo LLC is a Delaware limited liability company, and is the Managing Member of ELCM Sponsor I LLC.[6]

---

[2] Docket Item [hereinafter "D.I."] 97, Am. Compl., ¶ 13.
[3] *Id.* ¶ 14.
[4] *Id.* ¶ 15.
[5] *Id.* ¶ 16.
[6] *Id.* ¶ 17.

2

Defendant ELCM Partners, LLC, a Delaware limited liability company, is the Managing Member of East Lake Capital Management LLC.[7]

Defendant ELCM Asset Manager HoldCo LLC is a Delaware limited liability company, and is the Managing Member of GMF RSL Buyer LLC.[8]

Defendant Andrew White is the Authorized Representative of Defendants ELCM HCRE GP LLC and ELCM Sponsor I HoldCo LLC, and is the Manager of Defendants ELCM Partners, LLC and ELCM Asset Manager HoldCo LLC.[9]

Nominal Defendant ELCM Healthcare Real Estate Fund LP ("HCRE") is a Delaware limited partnership.[10]

Nominal Defendant ELCM Sponsor I LLC ("Sponsor I") is a Delaware limited liability company.[11]

Nominal Defendant East Lake Capital Management LLC ("ELCM") is a Delaware limited liability company.[12]

Nominal Defendant GMF RSL Buyer LLC ("RSL Buyer") is a Delaware limited liability company.[13]

---

[7] *Id.* ¶ 18.
[8] *Id.* ¶ 19.
[9] *Id.* ¶ 20.
[10] *Id.* ¶ 21.
[11] *Id.* ¶ 22.
[12] *Id.* ¶ 23.
[13] *Id.* ¶ 24.

## B. *Factual Background*

### 1. The Business Structure

The Entity Defendants are part of a complicated jumble of entities. Scores more related entities exist than are named Defendants in this action. This litigation presented an unusual problem, in that it was difficult to render a readable organizational chart that contained all seventy-five related entities and Mr. White.[14] Given the sheer number of entities, it is challenging to understand—and then to reduce to comprehensible writing—ELCM's structure. Nevertheless, a basic explanation is required here. What follows is such explanation, provided to the best of my ability, given the fact that throughout of the course of the litigation, I received very little help from Mr. White, the principal architect of this structure.

ELCM "represents itself as a 'private equity firm specializing in real estate and healthcare investments [that] actively acquire[s] companies and portfolios throughout the United States,' which it owns, operates and/or leases."[15] Defendant Andrew White is the sole member of ELCM Partners LLC.[16] ELCM Partners LLC, in turn, holds a roughly ninety percent interest in ELCM, with the remaining ten percent split evenly between an entity affiliated with the Plaintiffs and another unrelated entity.[17] The Plaintiffs and ELCM have joint interests (whether directly

---

[14] *Compare* JX 659 *with* D.I. 205, Ex. 1.
[15] D.I. 64, at 6.
[16] D.I. 205, Ex. 1.
[17] *Id.*

or indirectly) in a number of entities, including Nominal Defendant HCRE, the entity that is the subject of the Motion for Dissolution.[18]

Nominal Defendant HCRE owns—albeit indirectly, through a series of subentities—six senior care facilities, two in Oklahoma and four in Vermont.[19] Nominal Defendant RSL Buyer (prior to December 2018) held an interest in the cash flows generated by leaseholds in assisted living facilities in Indiana, North Carolina, and Tennessee.[20] These RSL Buyer-related facilities (collectively, the "NHI Facilities") were owned and leased by third-party National Health Investors, Inc. ("NHI").[21] Nominal Defendant Sponsor I serves as the pooling vehicle for general partner HCRE; it is also the indirect parent of HCRE's general partner, Defendant ELCM HCRE GP LLC.[22] One thing is clear from the illegible organizational chart provided by Mr. White: ELCM resides at the top of the entities' organizational chart.[23] It has an interest in all of the nursing home businesses that are at issue here, and it indirectly controls Sponsor I—the pooling vehicle—as well.[24]

---

[18] *Id.*

[19] Jan. 30, 2019 Evid. Hr'g Tr., at 31:17–22, 106:21–24, 181:13–14.

[20] *Id.* at 26:7–28:17, 31:3–6.

[21] *Id.* at 26:7–14.

[22] Feb. 14, 2019 Evid. Hr'g Tr., at 222:16–21.

[23] D.I. 205, Ex. 1.

[24] *Id.*

## 2. Other Litigation

In October 2018, NHI petitioned a federal court in Texas to appoint a receiver over an ELCM-related entity that was also the lessee of the NHI Facilities.[25]  That action revealed several important facts: the North Carolina regulator had suspended new admissions to a North Carolina facility and downgraded ELCM's operating license after issuing a 166-page report that documented problematic conditions at the facility.[26]  Similar circumstances had occurred at an Indiana facility, including the failure to timely pay employees, invoice residents or deposit rent checks, or timely pay invoices.[27]

In November 2018, the Vermont Attorney General filed an emergency motion in a Vermont Court, seeking a temporary receiver over three of the Vermont facilities, citing similar issues as had occurred in other states: failure to timely pay employees, failure to invoice residents or deposit rent checks, and failure to timely pay for critical services.[28]  The Vermont court appointed a temporary receiver to control those three Vermont facilities on November 7, 2018.[29]  By November 14, a fourth facility voluntarily stipulated to enter temporary receivership, which meant

---

[25] JX 329.

[26] JX 221; JX 222; JX 329, at 37–202, 221–30; Jan. 30, 2019 Hr'g Tr., at 46:18–47:8.

[27] JX 329, at 26–29, 203–20.

[28] JX 328; JX 336.

[29] JX 328; JX 338.

that all Vermont facilities related to the parties here were then under receivership.[30] The receiverships have since become permanent.[31]

Given the above, on November 19, 2018 the Plaintiffs filed this action. Their Complaint asserted a derivative claim for breach of fiduciary duty, breach of contract claims against HCRE, Sponsor I, ELCM, and RSL Buyer, and sought declaratory and injunctive relief to prevent Mr. White from calling any additional capital.[32] An Amended Complaint was filed on March 12, 2019, which added a count to seek judicial dissolution of HCRE.[33]

After the initial Complaint was filed, on November 28, 2018, the North Carolina regulator permanently revoked Mr. White's license to operate the North Carolina facility.[34] Also in that month, the Indiana regulator banned new admissions to the Indiana facility, suspended its license, and sought permanent of revocation of that license.[35] The bases for the regulator's action were, among other things, "abdication of management by an absent owner [Mr. White]," "failure to provide basic food and heating needs to residents," and "failure to cash rent checks."[36]

---

[30] JX 339; JX 340; *see also* June 10, 2019 Hr'g Tr., at 60:22–23.
[31] *See* JX 408.
[32] D.I. 1 ¶¶ 70–102.
[33] D.I. 97 ¶¶ 126–133.
[34] D.I. 32, at 3, Ex. A.
[35] JX 413.
[36] *Id.* at 4–5, 25, 28. Mr. White was not responsive to the regulator's phone calls and emails. *See id.* at 1, 34.

Ultimately, ELCM surrendered all of its buildings in North Carolina, Indiana, and Tennessee.[37]

On January 25, 2019, the Vermont court ordered appointment of a receiver[38] over three of the Vermont facilities, finding clear and convincing evidence that residents faced "imminent danger of severe . . . harm," citing food shortages, nursing shortages, and "remote and unresponsive management and resulting compromise of services."[39] After a trial on the merits, the Vermont court determined that "Mr. White, despite the existence of multiple LLCs, is clearly the individual decision-maker in charge of all the decisions pertaining to the three facilities,"[40] that his "pattern of management is to be nonresponsive to communications and needs from Vermont managers,"[41] and that there was "no reason to believe that his patterns of management would be any different if operations were returned" to his control.[42]

---

[37] Jan. 30, 2019 Hr'g Tr., at 46:18–47:8.

[38] This receivership is effectively a permanent receivership. *See* JX 408. The Defendants contest the permanency of the Vermont receivership. *See* D.I. 187. On January 25, the Vermont receiver ordered that a permanent receiver be appointed; however, it ordered that the temporary receiver continue to serve as an interim receiver (in the permanent receivership) pending the outcome of a Motion to Disqualify. *See* JX 408. And, as the Defendants point out, once a final order is entered, the parties will have the right to appeal the Vermont court's decision to appoint a receiver. *See* JX 408. Thus, it is true that the specific Vermont receiver is not fixed; however, neither the fact that the individual who is appointed as the receiver may change nor the fact that the court's order may be appealed negates the permanency of the receivership itself.

[39] JX 408, at 25–26.

[40] *Id.* at 22.

[41] *Id.* at 16.

[42] *Id.* at 22.

The fourth Vermont facility was not initially included in the ongoing receivership due to insufficiency of service of the initial pleadings.[43]  On April 2, 2019, however, the Vermont court denied a motion to alter or amend its January 25 order, and on May 30 declared its intention to appoint a certain receiver over the four Vermont facilities.[44]

In addition to the North Carolina and Vermont actions, it is my understanding that proceedings affecting facilities in Oklahoma, Texas, New Jersey, Pennsylvania, Florida, and Minnesota have also been initiated.[45]

*C. Procedural History*

The relatively brief temporal history of this case has been uncommonly complex and adversarial.  It is, I find, relevant to the dissolution question before me.

The Plaintiffs filed suit on November 11, 2018, alleging breach of fiduciary duties and breach of contract.  Along with the Complaint, they filed a Motion to Expedite and a Motion to Appoint a Receiver *Pendente Lite*.[46]  At an initial scheduling teleconference on November 28, 2018, I directed the parties to confer on the most efficient way to proceed and to provide me with a stipulated status quo

---

[43] *Id.* at 23.

[44] D.I. 198, Exs. 1, 2.

[45] Jan. 30, 2019 Hr'g Tr., at 97:1–2, 111:1–3; Mar. 29, 2019 Hr'g Tr., at 21:2–24.  I note that the record, at this stage in the proceedings, is relatively limited with regards to the details of each litigation.

[46] D.I. 1.

9

order.[47]  The parties were unable to agree on a status quo order.[48]  Because of the Plaintiffs' concerns about ongoing litigation in other states involving the Defendants, I held another teleconference on December 10, 2018, and directed the parties to submit an interim status quo order.[49]  Again, the parties were unable to agree on that order and instead submitted competing orders;[50] the Defendants' counsel noted that the parties "were hampered in resolving this final issue by [his counsel] having very limited access to [Mr. White] while he is involved in the underlying proceedings in Vermont this week."[51]  Because of concerns regarding the litigation in Vermont, at the Plaintiffs' request, I entered the Defendants' Interim Status Quo Order on December 12, 2018.[52]

A hearing on the Motion to Appoint a Receiver *Pendente Lite* was rescheduled on numerous occasions between December 2018 and January 2019, and was ultimately held on January 30, 2019.[53]  The Plaintiffs filed a Motion to Compel Production of Documents on December 17, 2018.[54]  They sought discovery into the Defendants' electronic documents relevant to the evidentiary hearing on the appointment of a receiver *pendente lite*—the hearing was then scheduled for

---

[47] D.I. 22.
[48] *See* D.I. 23; D.I. 24; D.I. 25; D.I. 26.
[49] *See* D.I. 33; D.I. 34.
[50] *See* D.I. 36; D.I. 37.
[51] D.I. 37, at 1.
[52] D.I. 38.
[53] *See* D.I. 27; D.I. 45.
[54] D.I. 43.

10

December 26, 2018, but was later rescheduled to January 25, 2019 so that the Motion to Compel could be heard on December 26.[55] The parties resolved the Motion to Compel on December 24, 2018.[56] On January 17, 2019, the Defendants filed a Motion to Stay the proceedings pending decision from a Vermont court regarding nursing facilities there;[57] I denied the Motion to Stay on January 18, 2019.[58] Also on that date, I rescheduled the January 25, 2019 hearing on appointing a receiver *pendente lite* to January 30, 2019 because Mr. White had developed a scheduling conflict on January 25.[59]

The Plaintiffs submitted their pre-hearing brief on January 26, 2019, and the Defendants filed their opposition on January 29.[60] On the evening before of the hearing on the Motion to Appoint a Receiver *Pendente Lite*, then-counsel for the Defendants informed the Court that Mr. White would be unable to attend because he had been admitted to the hospital and had not been cleared to travel to Delaware; as such, he could not testify at the hearing on January 30.[61] Given that the hearing had already been rescheduled (due, in large part, to the Defendants' schedule and preferences), and given that Mr. White's counsel was available and ready to proceed,

---

[55] D.I. 45.
[56] D.I. 52.
[57] D.I. 58.
[58] D.I. 62.
[59] *Id.*; D.I. 75.
[60] D.I. 64; D.I. 70.
[61] D.I. 71.

11

I informed the parties that the evidentiary hearing would commence without Mr. White. After that day's testimony, and based on evidence generated at that hearing, on January 30, 2019 I ordered that an interim receiver be appointed.[62] I ordered that when Mr. White was able to travel, the evidentiary hearing would continue, at which time he could testify, and that I would then consider whether a receiver should be appointed *pendente lite*.[63] I held that, notwithstanding the interim appointment, the burden remained with the Plaintiffs to demonstrate cause to appoint a receiver *pendente lite*.

With the parties' agreement, I appointed William B. Chandler III to serve as Interim Receiver on February 7, 2019, and ordered specifically that Mr. White cooperate with the Receiver, so that the Receiver could efficiently operate the business pending a decision on appointment *pendente lite*.[64]

The continued evidentiary hearing was held on February 14 and 15, 2019.[65] Mr. White appeared; however, his testimony was, frankly, concerning. It was often rambling and distorted. Parts of the testimony were incomprehensible, and Mr. White needed frequent reminders to slow down and speak clearly for the court reporter. Based upon the record as it existed at the end of the hearing, I found it

---

[62] D.I. 72.
[63] *Id.*; D.I. 74.
[64] D.I. 79.
[65] D.I. 80.

appropriate to maintain the interim receivership pending briefing—briefing which, as it turned out, never occurred.[66]

On February 26, 2019, the Interim Receiver, William B. Chandler III, requested an office conference, which was held on February 28.[67] At that time, the Receiver described his interactions with Mr. White and expressed serious concern about the entities' operation.[68] The Receiver detailed instances where Mr. White was unresponsive to the Receiver's requests for information, and instances where the Receiver had been blindsided with matters needing immediate attention (but of which he was informed only at the last minute), such as funding payroll.[69] These were instances where Mr. White was aware of impending exigencies, but failed to timely inform the Receiver.[70] Mr. Chandler also detailed instances where Mr. White acted unprofessionally toward the Receiver.[71] Mr. Chandler indicated that Mr. White had not yet provided him with access to the entities' bank accounts.[72] Mr. Chandler also requested to withdraw as receiver, because—in light of Mr. White's intransigence—he could not effectively perform his duties on behalf of the

---

[66] *Id.*
[67] D.I. 83; D.I. 85.
[68] *See* Feb. 28, 2019 Conf. Tr.
[69] *Id.*
[70] *Id.*
[71] *Id.*
[72] *Id.*

13

businesses.[73] Mr. White's counsel attended the office conference, but was unable to explain Mr. White's lack of cooperation to my satisfaction.[74]

I indicated that I would grant the Receiver's motion to withdraw as soon as a successor receiver was identified.[75] I also asked the Receiver to produce a list of the documents and information that would be necessary for a receiver to operate the entities successfully, and I ordered Mr. White to produce those documents by a time certain, once identified.[76] If he did not produce them in a timely fashion, I indicated that I would issue a Rule to Show Cause why he should not be held in contempt.[77] Mr. Chandler filed the list of necessary items on March 1.[78] I ordered Mr. White to produce that information by March 11, 2019.[79]

Meanwhile, on March 6, 2019, the Defendants' counsel filed a Motion to Withdraw their representation.[80] On March 11, I ruled that the Defendants should find successor counsel in a timely fashion, at which point I would grant the Motion to Withdraw.[81]

---

[73] D.I. 85.
[74] *See* Feb. 28, 2019 Conf. Tr.
[75] *Id.*
[76] *Id.*
[77] *Id.*
[78] D.I. 88.
[79] D.I. 89.
[80] D.I. 90.
[81] D.I. 95.

On March 12, 2019 the Receiver informed the Court that Mr. White had not complied with the Court's Order and had not produced the information necessary for a receiver by March 11.[82] In a letter on March 13, Mr. White represented, through counsel, that he had "substantially compl[ied] with the Receiver's March 1, 2019 Requests."[83] As later evidence indicated, this was not so, although some information had been produced.

Also on March 12, the Plaintiffs amended their Complaint to seek judicial dissolution of HCRE.[84] At that time, a hearing on the Plaintiffs' dissolution claim was scheduled for March 29, 2019. Because of Mr. White's intent to retain new counsel, on March 27, 2019 I granted the parties' stipulated scheduling order, which allowed the Defendants to respond to the Amended Complaint on or before April 12, 2019—*after* the hearing on dissolution.[85]

Also on March 12, Mr. Chandler filed a Motion to Modify the Order Appointing Receiver *Pendente Lite*, to allow the Receiver to make a capital call on the entities' partners, and specifically Mr. White.[86] As he was still without access to the entities' bank accounts, Mr. Chandler had directed Mr. White to deposit nursing home patients' rent checks in a certain account, to be used by the Receiver to pay

---

[82] D.I. 99.
[83] D.I. 101.
[84] D.I. 97.
[85] D.I. 129.
[86] D.I. 96.

15

employees.[87] Instead, in direct contravention of the Receiver's directive, Mr. White deposited the checks into an account for one of *his own* entities, stating that the money was owed to him.[88] This money was thus unavailable to the Receiver, who accordingly could not pay wages to the employees, as was necessary to operate the business.[89] On March 13, I ordered Mr. White (via his entities) to repay the money he had diverted within 24 hours.[90] He did not. On March 14, I again ordered Mr. White to repay the money he had diverted from the entities.[91] On March 14, I gave the Defendants two weeks to retain successor counsel.[92]

On March 14, I issued a Rule to Appear and Show Cause why Mr. White should not be held in contempt for failure to comply with the Court's Order to cooperate with the Receiver, for his failure to produce certain documents to the Receiver, and for his failure to turn over certain funds to the Receiver, as well as why he should not be sanctioned for his uncooperative efforts hindering litigation.[93] The Rule to Show Cause hearing was scheduled for March 29, 2019, at 9:30 am.[94]

---

[87] *Id.*
[88] *Id.*
[89] *Id.*
[90] D.I. 102.
[91] Per the Receiver's representation at the March 29, 2019 Rule to Show Cause hearing, Mr. White ultimately returned the money. *See* Mar. 29, 2019 Hr'g Tr., at 16:16–18.
[92] D.I. 109; D.I. 111.
[93] D.I. 110.
[94] D.I. 112. I also scheduled argument on the appointment of a permanent receiver and judicial dissolution for that day. I have continued consideration of those motions, to allow Mr. White to participate. *See id.*

On March 19, the Plaintiffs filed a second Motion to Compel, seeking an order compelling Mr. White to make himself available for depositions in advance of the March 29 hearing.[95]  By letter of March 20, I informed the parties that given my understanding of the March 29 hearing—that it would address the factual record already created at the previous evidentiary hearings—there would be no need for additional depositions.[96]  Based on supplemental letters filed by both parties, it appears as though there was a misunderstanding between the Court, Plaintiffs' counsel, Defendants' counsel, and Mr. White regarding the scope of the March 29 hearing.[97]

Regardless, Mr. White failed to appear at the Rule to Show Cause hearing on March 29, 2019.[98]  The Receiver and the Plaintiffs' counsel did appear.[99]  The Plaintiffs' counsel shared with the Court an email from Mr. White, sent less than an hour before the hearing was to start, indicating that Mr. White would not be able to appear because he was ill and unable to travel.[100]  The Receiver then gave an extensive presentation, informing me that the funds misdirected by Mr. White had

---

[95] D.I. 117.
[96] D.I. 120.
[97] D.I. 121; D.I. 123; D.I. 124.
[98] D.I. 130; *see also* Mar. 29, 2019 Hr'g Tr.
[99] Mar. 29, 2019 Hr'g Tr. Because the two weeks allocated to Mr. White to obtain successor counsel had passed, on March 29, 2019 I granted his counsel's Motion to Withdraw.  D.I. 133. Since that time, the majority of the Defendant entities (that is, ELCM HCRE GP LLC, ELCM Sponsor I Holdco LLC, and ELCM Asset Management Holdco LLC) have been unrepresented by counsel.
[100] D.I. 121, at Court Ex. A.

17

been made available to the Receiver, and that some information and documents, which, per earlier Orders, Mr. White was supposed to have produced, had been made available to him, but that others had not.[101] He described the extensive efforts required of the Receiver's staff to preserve the business, which could have been avoided had Mr. White timely complied with this Court's Orders.[102]

The email sent by Mr. White to the Receiver and the Plaintiffs' counsel was not filed by Mr. White; however, I entered it into the record as a Court exhibit.[103] In the email, Mr. White explained that he was ill and unable to travel, but *not* why he did not request a continuance of the hearing before the Plaintiffs' counsel and the Receiver and his staff had prepared for the hearing and traveled to Georgetown. In an Order entered on March 29, I directed Mr. White to file a written explanation with the Court for his failure to appear at the March 29 hearing, including a physician's affidavit advising that Mr. White was prohibited from traveling to the hearing (and the date and time the physician so advised Mr. White).[104] This was to be completed by April 1, 2019, at 5:00 p.m. EDT.[105] Mr. White did not comply with that Order. He did not provide the Court with any further explanation as to why he was unable to travel or why he was unable to give the parties notice that he would not appear at

---

[101] Mar. 29, 2019 Hr'g Tr.
[102] *Id.* The Interim Receiver also described another instance where payroll was delayed because Mr. White had attempted to covertly issue an $80,000 bonus to an employee. *Id.* at 18:19–19:22.
[103] D.I. 121, at Court Ex. A.
[104] D.I. 132.
[105] *Id.*

the March 29 hearing. He did send an email (via an employee) to the Receiver at 5:08 p.m. on April 1, asking that I be informed that he would provide such information to the Court at a future time. To this date, Mr. White has not provided the Court with the requested physician's affidavit.

On April 4, 2019, I issued a Letter Opinion holding Mr. White in civil contempt for failing to appear at the Rule to Show Cause, for his continued lack of cooperation with the Interim Receiver, and for his continued noncompliance with this Court's orders.[106] I ordered him to pay the Plaintiffs' reasonable attorneys' fees and expenses incurred in connection with attending the March 29 hearing, as well as the Receiver's fees and expenses incurred as a result of Mr. White's uncooperative behavior.[107]

Also at the March 29 hearing, the Plaintiffs' counsel detailed the difficulties they experienced finding a successor interim receiver, given the specialized nature of the Defendants' business and exacerbated by Mr. White's lack of cooperation with Mr. Chandler. I indicated that I would entertain granting Mr. Chandler's request to withdraw and entering GMF Ventures LLC as the successor interim receiver, given the difficulty finding a qualified successor receiver.[108] I asked the

---

[106] 2019 WL 1501553. I originally issued the Letter Opinion on April 3, 2019; however, I withdrew and reissued it on April 4, 2019, to make a minor addition; no substantive change was made. D.I. 137.
[107] *Id.*
[108] Mar. 29, 2019 Hr'g Tr., at 37:9–21.

Plaintiffs to submit a proposed order to that effect by April 1, 2019, and to provide that proposed order to Mr. White for his review.[109] I ordered Mr. White to respond by 5:00 p.m. EDT on April 2, 2019.[110] He did not. With no response from Mr. White, on April 15, 2019, I granted the order replacing Mr. Chandler with GMF Ventures LLC as interim receiver.[111]

Also on March 29, I ordered Mr. White to respond to the Plaintiffs' Brief in Support of Their Motion for Dissolution by 5:00 p.m. EDT on April 8, 2019, so that the Motion could be decided on the papers.[112] He did not respond by that deadline.

Mr. White filed a letter on April 9, 2019, requesting that I direct the entities under receivership to pay his attorney's fees.[113] That same day, Mr. Chandler (still, at that time, the Interim Receiver) filed a response, explaining why such payment was unwarranted.[114]

On April 19, 2019, Ross Aronstam & Moritz LLP entered its appearance on behalf of the successor Interim Receiver, GMF Ventures LLC, and filed an Emergency Motion to Amend the Receiver Order.[115] The Interim Receiver sought to amend the Receiver Order to permit the Receiver to "terminate the management

---

[109] *Id.*
[110] D.I. 132.
[111] D.I. 142.
[112] *Id.*
[113] D.I. 138.
[114] D.I. 139.
[115] D.I. 144; D.I. 145.

agreement(s) under which Defendant Andrew White and/or his affiliated entities are designated as the 'manager' of any of the Nominal Defendants and/or their subsidiaries."[116] April 19 was a court holiday; accordingly, on the morning of Monday, April 22, 2019, I scheduled an emergency teleconference for noon that day and provided notice to the parties.[117] At that teleconference, I granted the Interim Receiver's Motion.[118] Mr. White did not appear; however, he did inform the Register in Chancery by email at 12:01 p.m.—that is, shortly after the time the teleconference was scheduled to begin—that he was unable to attend.[119] Accordingly, I ordered Mr. White to explain why he did not attend and gave him an opportunity to challenge the Interim Receiver's request to amend the Receiver Order, within two weeks (by May 6, 2019).[120] He did not respond.

On April 29, 2019, the Interim Receiver filed a letter, explaining that it was in the process of retaining Ryan Newell, Esquire of Connolly Gallagher LLP to represent the four Nominal Defendants.[121] On May 1, 2019, I wrote a letter to the parties, explaining that in light of the Nominal Defendants' retention of counsel, such counsel would have the opportunity to reply to the Motion for Dissolution by

---

[116] D.I. 145, at 1–2.
[117] D.I. 146.
[118] D.I. 149.
[119] *See* Apr. 22, 2019 Teleconf. Tr.
[120] D.I. 149; *see also* Apr. 22, 2019 Teleconf. Tr.
[121] D.I. 153.

May 8, 2019, at which point I would consider the matter submitted on the papers.[122] On May 2, 2019, Connolly Gallagher LLP entered its appearance on behalf of the Nominal Defendants.[123] On May 8, 2019, the Nominal Defendants joined the Plaintiffs' Motion for Dissolution.[124]

On April 10, 2019, former Receiver Mr. Chandler filed a letter, with supporting evidence and an affidavit, detailing the fees incurred as a result of Mr. White's uncooperative behavior and his failure to appear at the March 29 hearing, as requested in my April 4 Letter Opinion.[125] On April 26, 2019, the Plaintiffs filed a letter, with supporting affidavits, detailing the fees incurred as a result of Mr. White's failure to appear at the March 29 hearing, as requested in my April 4 Letter Opinion.[126] On May 1, 2019, I sent Mr. White those two letters and requested that Mr. White respond by May 13, 2019; I noted that if he did not respond, I would consider the fees as requested in the letters unopposed.[127] He did not respond. Accordingly, on May 14, 2019, I ordered Mr. White to pay $199,218.91 of the receiver's fees incurred as result of Mr. White's uncooperative behavior and his failure to appear at the March 29, 2019 hearing, and $112,970.50 of the Plaintiffs'

---

[122] D.I. 156.
[123] D.I. 157.
[124] D.I. 162.
[125] D.I. 140.
[126] D.I. 150.
[127] D.I. 154.

22

fees and expenses incurred as a result of Mr. White's failure to appear at the March 29 hearing.[128]

Mr. White did attempt to file a letter—the contents of which remain unknown to me—by faxing it to the Register in Chancery on or about May 9, 2019. The Register in Chancery was unable to add the letter to the docket for several reasons: first, because Mr. White had not followed proper filing procedures; and second, because Mr. White had not followed proper notice procedures.[129] The Register in Chancery explained this in a letter to Mr. White on May 9, 2019.[130] The Plaintiffs filed a response to Mr. White's letter on May 10, 2019; however, because I cannot consider Mr. White's letter, I also do not consider the Plaintiffs' response.[131]

On May 7, 2019, the Interim Receiver filed a Motion for Civil Contempt.[132] It explained that "GMF Ventures' limited time as Interim Receiver has been marred by many of the same issues that hampered the efforts of the predecessor Interim Receiver, William B. Chandler III."[133] It accused Mr. White of providing false information to the Interim Receiver, as well as refusing to provide information at all.[134] Because of Mr. White's repeated failures to comply with this Court's orders,

---

[128] D.I. 168.
[129] D.I. 164.
[130] *Id.*
[131] D.I. 166.
[132] D.I. 159.
[133] *Id.* at ¶ 1.
[134] *See generally id.*

23

the Interim Receiver requested that I issue a bench warrant for Mr. White's arrest.[135] It also requested that I decide the Motion for Dissolution as quickly as possible.[136] On May 8, 2019, I requested Mr. White to respond, in writing, by May 22, 2019.[137]

On May 22, 2019, Mr. White (and his entity, ELCM Ventures, LLC) retained counsel, Evan O. Williford, Esquire and Andrew J. Huber, Esquire of The Williford Firm LLC.[138] Shortly thereafter, counsel placed a telephone call to the Court, in which Mr. Williford requested an extension of the May 22, 2019 deadline so that he could respond on Mr. White's behalf.[139] I denied the Motion, and memorialized our conversation in a letter to counsel.[140] I informed Mr. Williford that if no response was received by the May 22 deadline—that is, by the end of the day—I would issue a Rule to Show Cause, and at that time, Mr. Williford would have the opportunity to raise the same arguments he would have made in opposition to the Motion for Civil Contempt.[141]

No responsive pleading having been filed by the May 22 deadline, on May 23, 2019 I issued a Rule to Show Cause, ordering Mr. White to appear and show

---

[135] *Id.* at ¶ 9.
[136] *Id.* at ¶ 10.
[137] D.I. 163.
[138] D.I. 174.
[139] D.I. 176.
[140] *Id.*
[141] *Id.*

cause why he should not be found in contempt for failing to abide by the Court's orders, returnable on June 10, 2019 at 1:30 p.m.[142]

On May 29, 2019, Defendants Andrew White and ELCM Partners, LLC moved to dismiss the Amended Complaint. That motion was untimely by more than six weeks under the parties' stipulated scheduling order. The Defendants have not attempted to explain or justify this untimely filing, nor does the Motion even acknowledge that fact.[143]

On June 5, 2019, counsel for the Interim Receiver filed a letter concerning the June 10, 2019 hearing.[144] Per the Receiver, Mr. White had not yet paid any of the fees for which he is responsible under my May 14, 2019 Order. He also had not indicated when he would do so; Mr. Williford informed the Plaintiffs' counsel that "Mr. White is considering the matter."[145] Accordingly, the Receiver requested that, at the June 10 hearing, I obtain an explanation from Mr. White regarding his failure to comply and issue an order setting a firm deadline for payment and detailing the consequences of noncompliance.[146]

On June 9, 2019—the eve of the Rule to Show Cause hearing—counsel for Mr. White filed a written response to the Rule. In it, Mr. White avers that he has

---

[142] D.I. 177.
[143] D.I. 179.
[144] D.I. 181.
[145] *Id.*
[146] *Id.*

"cooperated with reasonable requests" and is not in violation of any court order, so therefore coercive sanctions are inappropriate.[147]

Also on June 9, 2019, the day before supplemental oral argument on the dissolution issue, counsel for Mr. White and ELCM Partners, LLC filed an untimely answering brief in opposition to the Plaintiffs' Motion for Dissolution.[148] In their submission, the Defendants contend that the Plaintiffs effectively seek summary judgment, and so the summary judgment standard should apply to the dissolution request; they further argue that dissolution is not warranted and that further discovery is necessary.[149] The brief was submitted without seeking leave of the court to file an untimely answering brief to the Motion for Dissolution, an opportunity Mr. White had long since waived. Again, Mr. White did not so much as acknowledge that the brief was filed over two months after the court-imposed deadline for response of April 8, 2019.[150]

On June 10, 2019, the Rule to Appear and Show Cause why Mr. White should not be held in contempt was held at 1:30 p.m., a time reserved as well for supplemental argument on the dissolution issue. Mr. White did not appear at 1:30 p.m., although his counsel made a timely appearance. He did, however, arrive at the

---

[147] D.I. 182.
[148] D.I. 183.
[149] *Id.*
[150] *Id.*

hearing later.[151]   The parties made arguments pertaining to dissolution, and subsequently, Mr. White testified regarding the subject of the Rule to Show Cause.[152] I ordered various items be provided to the Interim Receiver—such as bank account access, which had been a problem for the Receivers since February and has been the subject of numerous orders.[153]  I also ordered that Mr. White pay the amount he owed under my May 14, 2019 Order by June 21, 2019.  I tasked the parties with crafting— before they left the Courthouse—letters from Mr. White to relevant financial institutions that would provide the Interim Receiver with access to the entities' bank accounts, and recessed the hearing.[154]   The resulting negotiations over this seemingly-simple matter lasted several hours, and I was twice called upon to clarify my instructions to the parties.  Finally, the parties agreed to an appropriate form of letters; however, upon signing those letters, Mr. White made additional alterations. After my intervention, Mr. White ultimately signed the letters, and the hearing adjourned at 6:50 p.m.[155]

---

[151] Mr. White represented that flights from Texas had been delayed due to inclement weather the day before, an odd representation in light of his flight to Sussex County by private jet.  June 10, 2019 Hr'g Tr., at 106:9–15.

[152] *See generally id.*

[153] Specifically, I ordered that by 5:00 p.m. EDT on June 11, Mr. White must call Wells Fargo and Chase Bank, where the entities had accounts, by June 11, 2019 to ensure the Receiver had access to those accounts; that he inform the receiver where certain storage lockers were located by June 11, 2019; and that he provide an organizational chart to the receiver.  *See id.* at 114:5–6; 119:23–120:1; 122:6–8.

[154] *See id.*

[155] D.I. 186.

27

On June 13, 2019, counsel for the Receiver notified the Court that Mr. White had not provided the Receiver with access to the entities' bank accounts, as he was required to have done by June 11 under my June 10 bench order.[156]  Specifically, Mr. White had failed to provide the Receiver with the necessary bank account numbers.  In response, I held a conference by phone on June 14, 2019 at 4:00 p.m.  By the time we convened, counsel for the Receiver informed the Court that, after the notice was filed and shortly before the conference, Mr. White had provided the requisite information and access.[157]  At the conference, counsel for Mr. White informed the Court that Mr. White had driven "almost four hours to Houston, in the middle of the night last night, so that he could be at [the bank's] location when it opened and obtain [the] account number."[158]  Because White had provided the Receiver access to the bank accounts, I declined to hold Mr. White in contempt, based in part on his counsel's representation that it was not sufficiently clear from my previous order that Mr. White was required by a time certain to provide the Receiver with account numbers.[159]  With regard to the post-hearing briefing, I ordered the Plaintiffs to submit their briefing by June 19, 2019, and the Defendants

[156] D.I. 188.
[157] *See* June 14, 2019 Teleconf. Tr., at 3:23–4:1.
[158] *Id.* at 8:6–11.
[159] *Id.* at 11:24–12:4.

to submit theirs by June 26, 2019—a schedule to which the parties had already agreed.[160]

On June 19, 2019, the Plaintiffs submitted their comprehensive statement of facts.[161] On Friday June 21, 2019—the day Mr. White was required to have paid the amount he owed under my May 14 order by 5:00 p.m.—I received a letter from Mr. White's counsel at 3:15 p.m. informing me that Mr. White had been admitted to the hospital on June 19 and that counsel had been unable to reach him.[162] As a result, counsel requested that I extend Mr. White's deadline for payment from June 21 until June 28 and extend the deadline to submit post-trial briefing from June 26 to July 8.[163] I held a teleconference to address the requested extensions the following Monday, June 26, 2019.[164] According to Mr. White's counsel, he had been admitted to the hospital, and his parlous condition rendered him incapable of assisting his counsel, presumably even to the extent of writing a check to comply with this Court's order, resulting in his counsels' requests for extensions of deadlines.[165] At any rate, I conditionally granted the extensions, provided that by June 27, Mr. White submit a physician's affidavit stating that Mr. White's condition, either mental or physical,

---

[160] *Id.* at 14:9–21.
[161] D.I. 198.
[162] D.I. 201.
[163] *Id.*
[164] D.I. 203.
[165] *See generally* June 27, 2019 Teleconf. Tr.

prevented him from executing payment by the deadline and prevented him from participating with his attorneys so they could prepare post-trial briefing.[166]

On June 26, 2019, counsel for Mr. White and ELCM Partners submitted post-trial briefing, at which point I considered the issue of dissolution submitted.[167] Counsel did not utilize the conditional deadline extension for that submission.

Mr. White did not provide a physician's affidavit by June 27, 2019. Accordingly, on June 28, 2019, the Plaintiffs filed a letter requesting sanctions for Mr. White's noncompliance; they pointed out that Mr. White was required to make sanctions payments to the Receiver by June 21, and that I had extended the deadline to June 28 *if and only if* he provided a physician's affidavit by June 27.[168] Mr. White did not provide an affidavit, and so he had not complied with the Court's deadline.

I held a teleconference to address Mr. White's nonpayment on June 28, 2019. Unbeknownst to me until he began to speak, Mr. White chose to attend the teleconference in order to read a statement into the record. In his statement, Mr. White accused his Delaware counsel of lying to the court in the teleconference of three days prior, as well as misrepresenting Mr. White's positions on several other occasions.[169] According to Mr. White, he had *always* been unable to comply with

---

[166] *Id.* at 16:2–17:2.
[167] D.I. 205.
[168] D.I. 209.
[169] June 28, 2019 Teleconf. Tr., at 6:2–8:6.

the sanctions order for financial reasons, although he had not previously so informed me.[170] He had *not* been admitted to the hospital and was at all times able to cooperate with his counsel; the representations to the contrary by Mr. Williford were inaccurate confabulations on counsel's part.[171] I declined the Plaintiffs' renewed request to incarcerate Mr. White as a civil contempt sanction, and I informed the parties that I would enter an order in the form of a judgment regarding the sanctions payments.[172] I entered that order on July 2, 2019.[173]

In the evening hours of July 1, 2019, Mr. Williford filed a Motion for Leave to Withdraw as counsel to Defendants Andrew White and ELCM Partners, LLC. The Motion stated that Mr. Williford had been discharged by his client, effective as of 5:00 p.m. on July 1, 2019.[174] I held a teleconference to address Mr. Williford's request on July 2, 2019.[175] I provided the Defendants until close of business the next day, July 3, to retain Delaware counsel; otherwise, I would grant Mr. Williford's request to withdraw, at which point outside counsel's admission to practice *pro hac vice* would be revoked[176] and Mr. White would once again have to proceed *pro se.*

---

[170] *Id.* at 9:14–19.

[171] *See id.* at 7:22–8:6. I need not resolve factual issues here, but I feel called upon to say that both my personal experience with Mr. Williford, as well as Mr. Williford's reputation in the Bar, render Mr. White's allegations wholly incredible to me.

[172] *See id.*

[173] D.I. 214.

[174] D.I. 215.

[175] D.I. 217.

[176] This is not a reflection on outside counsel, but is in conformity with the requirement that Delaware litigants retain Delaware counsel.

The Defendants did not retain Delaware counsel by that time. Accordingly, on July 5, 2019, I granted the Motion to Withdraw and revoked outside counsel's admission *pro hac vice*.[177] At this time, Mr. White is, once again, proceeding *pro se*.[178]

## II. ANALYSIS

### A. Legal Standard

HCRE, the entity for which the Plaintiffs seek judicial dissolution, is a limited partnership. Section 17-802 of the Delaware Code provides that "[o]n application by or for a partner the Court of Chancery may decree dissolution of a limited partnership whenever it is *not reasonably practicable* to carry on the purpose of the business in conformity with the partnership agreement."[179] As this Court has noted, this does not require a finding that the business of the partnership has become impossible.[180] "In evaluating whether to dissolve a partnership pursuant to § 17-802, courts must determine the business of the partnership and the general partner's ability to achieve that purpose in conformity with the partnership agreement."[181] Under Section 17-802 and the analogous LLC dissolution statute, Section 18-802,[182]

---

[177] D.I. 220.
[178] The entity Defendants are not represented by counsel.
[179] 6 *Del. C.* § 17-802.
[180] *See PC Tower Ctr., Inc. v. Tower Ctr. Dev. Assocs. Ltd. P'ship*, 1989 WL 63901, at *6 (Del. Ch. June 8, 1989).
[181] *Cincinnati Bell Cell. Sys. v. Ameritech Mobile Phone Serv.*, 1996 WL 506906, at *5 (Del. Ch. Sept. 3, 1996).
[182] *See In re Silver Leaf, LLC*, 2005 WL 2045641, at *10 (Del. Ch. Aug. 18, 2005) ("Without much case law applying [the LLC statute, 6 *Del. C.* 18-802], the court looks by analogy to the dissolution statute for limited partnerships, 6 *Del. C.* § 17-802, which contains essentially the same wording as the LLC statute.").

32

the Court of Chancery has ordered dissolution in instances of deadlock[183] and where the entity's purpose could no longer be achieved.[184]

*B. Judicial Dissolution is Warranted*

HCRE's Limited Partnership Agreement ("LPA") defines the entity's purpose as:

> (a) making real estate and real estate-related investments related to senior housing . . . and skilled nursing throughout the United States and Canada, including investments acquired with the intention of converting an investment to a senior housing or skilled nursing investment, (b) managing, supervising, renovating, repositioning, developing, redeveloping, holding for investment and otherwise dealing with and disposing of such investments and (c) engaging in other such activities related, incidental or ancillary thereto as the General Partner deems necessary, advisable or appropriate.[185]

In other words, HCRE's business is investing in and operating nursing homes. Mr. White and his entities have been stripped of their right to operate nursing homes in various states, such as Vermont and North Carolina. The four homes in Vermont have been placed under permanent receivership due to Mr. White's deficiencies in operating the facilities. The facilities in North Carolina, Tennessee, and Indiana were relinquished to NHI's control.[186] What remains of the operations side of HCRE's business—namely, the facilities in Oklahoma—is under the direction of a

---

[183] *See id.* at *11; *see also Haley v. Talcott*, 864 A.2d 86, 89 (Del. Ch. 2004).
[184] *See PC Tower Ctr., Inc.*, 1989 WL 63901, at *6.
[185] JX 332 § 1.3.
[186] Jan. 30, 2019 Hr'g Tr., at 46:18–47:8.

receiver appointed by this Court.[187]  I appointed the first interim receiver after I determined following a hearing that Mr. White was unlikely to be able to adequately manage that business.  The evidence showed that he had engaged in manifestly unsatisfactory practices: not invoicing patients, for example, and not cashing residents' checks for rent and services, which led to an episodic inability to pay staff or buy food for patients, as reflected by the evidence in this court and before the North Carolina regulators and the Vermont court.  It also was clear to me, based on his own testimony, that Mr. White, as principal of the general partner, was unlikely to be able to operate these businesses in his current state of health, in light of his record testimony and his serial inability to attend (or his evasion of) proceedings in this Court.  Moreover, Mr. White is, I find, manifestly unwilling to assist others in conducting the business of the partnership, as demonstrated by his unwillingness to assist either Interim Receiver in that regard.  As described above, even with a receiver in place, the business is in jeopardy, due to Mr. White's failure to cooperate.  My conclusion that Mr. White is unwilling or unable to conduct this business has only been reinforced by his actions in contempt of this Court thereafter.

The first receiver, William B. Chandler III, was forced to resign as Mr. White's obstructionism exacerbated the Partnership's problems.  Mr. White has

---

[187] The Vermont facilities also remain an asset of HCRE; as discussed above, they are under a permanent receivership implemented by a Vermont court.

obstructed the current Receiver's ability to operate in an efficient and appropriate manner, as well. Thus, the portion of the Partnership business devoted to operating nursing facilities has been frustrated, and is no longer reasonably practical to continue.

The other portion of the business encompassed by the Partnership Agreement, investment in and acquisition of new facilities, is also no longer practical to pursue. The record reflects that the myriad litigations are a significant drain on the Partnership's resources; the Partnership's equity in the Oklahoma nursing homes is one of its few remaining assets.[188] Mr. White himself has represented that his businesses have no value.[189] Thus, the Partnership is not in a financial position to undertake further acquisitions. Even that portion of the investment side of the business that consists of pursuit of litigation assets has been hindered by Mr. White's refusal to cooperate with the Receivers.[190] As discussed above, the former Interim Receiver, Mr. Chandler, repeatedly asked for documents and information related to the entities, but Mr. White failed to provide all of that material.[191] He refused to cooperate with the Receivers in a number of other ways as well, including by

---

[188] *See* Mar. 29, 2019 Hr'g Tr., at 26:6–29:15.
[189] June 10, 2019 Hr'g Tr., at 20:10–21; June 10, 2019 Hr'g, PX 7.
[190] Mar. 29, 2019 Hr'g Tr., at 9:18–23:24.
[191] *Id.*

35

depositing the facilities' rent checks into his personal entities' account and stymying payroll procedures.[192]

In other words, the only viable portion of HCRE's business is the Oklahoma nursing homes,[193] and it is not practical for the Receiver to operate those nursing homes, due to the Receiver's inability to obtain Mr. White's cooperation. The general partner and its principal show no ability to resume operation of this remnant of the business that still exists, nor do they show an ability to invest in additional enterprises. The business, therefore, must be liquidated to preserve what value remains. In other words, the operation of the business is stymied, and absent liquidation, its remaining value is at risk.

Entities associated with the current Receiver, I expect, may be among the bidders for assets of HCRE. Accordingly, it is appropriate to appoint a third-party final receiver to oversee the liquidation of HCRE. The parties should consult promptly and provide for a successor receiver.

### III. CONCLUSION

For the foregoing reasons, the Plaintiffs' petition for dissolution is granted.

**IT IS SO ORDERED.**

---

[192] *Id.*

[193] I note that while the Vermont facilities may also be viable portions of the business, they are subject to the receivership implemented by the Vermont Court and they are also encumbered. Mar. 29, 2019 Hr'g Tr., at 28:8–9.